IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ORBIT ONE COMMUNICATIONS, LLC, and NUMEREX SOLUTIONS, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No.: _____ |
| vs. | ) ) | |
| MOREY CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

COME NOW Plaintiffs Orbit One Communications, LLC ("Orbit One"), and Numerex Solutions, LLC ("Numerex Solutions"), and, through their attorneys, file their Complaint against Defendant Morey Corporation ("Morey"), showing as follows:

## THE PARTIES

1. Plaintiff Orbit One Communications, LLC, is a Georgia limited liability company with its principal place of business at 1600 Parkwood Circle, Suite 500, Atlanta, GA 30339. The sole member of Orbit One is Numerex Corp., a Pennsylvania company.

1

2.     Plaintiff Numerex Solutions, LLC, is a Georgia limited liability company with its principal place of business at 1600 Parkwood Circle, Suite 500, Atlanta, GA 30339.  The sole member of Numerex Solutions is Numerex Corp., a Pennsylvania company.

3.     Defendant Morey Corporation is an Illinois company with its principal place of business at 100 Morey Drive, Woodridge, IL.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. § 1332, as this matter is between citizens of different states and as the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     This Court has personal jurisdiction over Defendant Morey as it conducts business in and otherwise has sufficient contacts with this state. Defendant Morey has furthermore consented to jurisdiction in this Court under §11 of the Business Services Agreement ("BSA") at issue in this case.

6.     Venue is proper in this Court under § 11 of the BSA.  Venue is furthermore proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(1) and (2) and 1391(c) because this Court has personal jurisdiction over Morey, a corporation, and because a substantial part of the acts, events, or omissions giving rise to the

claims of Plaintiffs occurred in this district, including but not limited to, the following:

    a. meetings with representatives of Morey;

    b. issuance of purchase orders to Morey;

    c. issuance of payments to Morey;

    d. sales of Morey-manufactured products;

    e. product testing, certification, and support relating to Morey-manufactured products;

    f. investigation, evaluation, and troubleshooting of problems with Morey-manufactured products;

    g. receipt and testing of defective Morey-manufactured products;

    h. expenditures of substantial sums and incurrence of substantial losses in connection with transactions with Morey; and

    i. assignment of the above-referenced BSA to Orbit One by Orbit One Communications, Inc., a Delaware corporation ("Orbit Inc.").

## FACTUAL ALLEGATIONS

7.    Orbit One is in the business of developing, procuring, and providing communications solutions, including wireless machine-to-machine ("M2M") communications technology and equipment.  Numerex Solutions is in the business

3

of marketing, selling and providing communications solutions, including wireless M2M communications technology and equipment.

8.    Defendant Morey is in the business of providing engineering services and producing and selling component parts and finished products for use in devices that incorporate those components.

9.    On or about January 18, 2007, Morey entered into the BSA with Orbit Inc., under which agreement Morey was to provide turn-key manufacturing services with respect to a Global Positioning System ("GPS") equipped tracking device known as the OrbitTrax-SX1 (the "SX1"). Upon information and belief, Orbit Inc. selected Morey after the latter represented itself as having pertinent technical expertise and experience in designing and manufacturing GPS-equipped communications devices similar to the SX1, inclusive of ruggedized, military-grade devices, and expertise in managing third-party component suppliers.

10.    Orbit One is the assignee of the BSA and business arrangement with Morey from Orbit Inc. as a result of an Asset Purchase Agreement ("APA") dated July 31, 2007. Among the assets acquired by Orbit One pursuant to the APA were all rights and interest in and to the BSA with Morey.

11.    Among Morey's various commitments under the BSA were the following:

4

a. provide mechanical development and design services for the housing to enclose the SX1 units' components;

b. transact directly with and manage all third party suppliers furnishing components for assembly into finished SX1 units;

c. ensure the reliability of all components and ensure all components meet specifications for inclusion in SX1 units;

d. manufacture, assemble, test, and deliver properly functioning SX1 units; and

e. timely and properly respond to warranty and support issues with SX1 units, inclusive of repairing or replacing defective units.

12.   Plaintiffs relied on Morey, as their turn-key manufacturer, to meet all of its contractual commitments, inclusive of the key deliverables specified in Paragraph 11, above.

13.   After an original version of the SX1 (Rev 1) performed unsatisfactorily due in part to failures with its Global Star Satellite chip, the SX1 was redesigned (Rev 2) based upon the information and materials provided by Morey and its component suppliers.

14.   Approximately 20,000 units of the Rev 2 SX1 were produced by Morey and sold by Orbit One between December 2009 and November 2010.

15.   After issues were discovered with the Rev 2 SX1 and Morey's recommended work-arounds were engineered into the product, approximately 6,000 units of the re-engineered SX1 units (Rev 2CD and Rev 3) were produced by Morey between November 2010 and March 2011.

16.   Approximately 5,000-6,000 Rev 2CD and Rev 3 SX1 units were sold by Orbit One.

17.   In or about August 2010, Plaintiffs began discovering that SX1 units failed to properly perform when tested upon delivery and began receiving notices from customers of failures of the SX1 to perform properly in the field.

18.   Plaintiffs notified Morey of the SX1 failures, worked to discover the problem, and sought to return and store defective SX1 units for repair or replacement by Morey.

19.   During the course of the BSA engagement, as a result of various investigations, Orbit One became aware that performance failures with the SX1 resulted from, among other things, a defective battery as well as issues with the quality and reliable performance of other components, in particular the failure of the LEA-5Q GPS receiver chip (the "LEA-5") supplied by u-blox America, Inc. ("u-blox"), to meet claimed performance specifications.

6

20.    Orbit One also learned that Morey had not applied the rigorous inspection and testing of components and assembled units as was expected of it and that Morey was furthermore not timely performing the support, repair and replacement duties expected of it.

21.    With regard to the u-blox LEA-5 that was a key component of the SX1, Orbit One discovered, among other things, that the u-blox-published Data Sheet on which Orbit One had relied stated the incorrect specifications for the radio frequency input tolerance of the LEA-5.

22.    Orbit One further learned that after the incorrect Data Sheet remained in publication for almost one year, u-blox purported to have published a corrected Data Sheet on or about June 2009, with respect to which Orbit One was never notified by either u-blox or Morey.

23.    Even after the errors with the u-blox-published specifications were identified and corrected, Morey failed to provide notice to Orbit One of such development and continued to manufacture SX1 units that were materially compromised by such errors.

24.    Upon information and belief, Morey had entered into a contract directly or submitted purchase orders in its name with the component suppliers, inclusive of u-blox in connection with u-blox's provision of the LEA-5.

7

25.     As the turn-key manufacturer, and pursuant to the BSA and its incorporated Statement of Work ("SOW") as well as Orbit One's requirement of a merchantable SX1 product that met Orbit One's and its customers' needs, Morey had a duty to ensure that the components supplied, including those supplied by u-blox and the battery supplier

    a.  met the specifications set forth by Orbit One;

    b.  were made of reliable materials;

    c.  were fit for their intended purpose; and

    d.  otherwise performed as required.

26.     In particular, among other pertinent provisions of the BSA and SOW, are the following:

27.     Section 1.1.1. of the BSA provides, *inter alia*, that Morey shall perform for Orbit One "the Mechanical development/design and manufacturing services" as described in the SOW.

28.     Section 1.2.2. of the BSA places the obligation on Morey to obtain the necessary licenses or rights from third parties.

29.     Section 7 of the BSA provides, *inter alia*, that Morey will follow all ISO processes in the development of the SX1.

30.   SOW (version 00.00.04) § 1.2. provides, *inter alia*, (a) that Morey will obtain "Prototype parts of the new enclosure, verify the mechanical design, and then manufacture Production modules" and (b) that Morey will "set-up the circuit board Bill of Material (BOM) in their system, procure material and build Prototype circuit boards" for Orbit One's evaluation.

31.   SOW (version 00.00.04) § 3 provides, *inter alia*, (a) that Morey was to procure production housing; perform fixture, Quality Assurance ("QA") and other testing of the assembled units; and provide a QA test report to Orbit One; and (b) that Morey was to procure all electrical board components based upon an approved prototype; inspect and otherwise test all components; and provide a QA test report to Orbit One.

32.   Morey further warranted and guaranteed in § 6.1 of the BSA that the services described in the SOW were to be "performed with at least that degree of skill and judgment normally exercised by recognized professional firms performing services of the same or substantially similar nature."

33.   In § 6.3 of the BSA, Morey further warranted the SX1 housing (enclosure) "for parts and workmanship" for twelve months from the time of shipment.

34.     Morey failed to comply with its obligations in the BSA and SOW, including failing to ensure that the components and parts procured were suitable for use in the SX1 and met the required specifications, as well as failing to properly and timely repair and replace defective units.

35.     Morey also failed to ensure that the products it manufactured were merchantable and fit for their intended purpose, including failing to make sure that the SX1 performed as required by Plaintiffs and their customers, and failing to vigilantly investigate, pursue and/or hold accountable suppliers for defective components and parts.

36.     Orbit One has performed all of its obligations under the BSA and SOW.

37.     As a result of Morey's failures and the consequent failures of the SX1 to perform as required, customers of Plaintiffs have demanded support and compensation for damages from Plaintiffs, including the repair and/or replacement of product, with Plaintiffs having paid such compensation and provided such support, inclusive of repair services and replacement products.

## COUNT I
## <u>BREACH OF CONTRACT</u>

38.    The allegations in paragraphs 1-37 above are incorporated by reference as though fully set forth herein.

39.    Morey is responsible for the SX1's performance failures and breached its obligations under the BSA and SOW in regard to the following omissions on its part:

    a.  failing to provide proper manufacturing services consistent with ISO processes;

    b.  failing to ensure that SX1 units were properly manufactured and performed in accordance with their specifications;

    c.  failing to procure components and parts suitable for use in the SX1;

    d.  failing to inspect such components and parts to determine that they met the required specifications;

    e.  failing to provide timely and proper support and repair services and/or replacement products and parts; and

    f.  failing to make sure that the SX1 performed as required.

40.    Plaintiffs have satisfied all conditions precedent to recovering from Morey on the contract.

41.     Morey's refusal to make Plaintiffs whole has furthermore been in bad faith.

42.     Plaintiffs are entitled to recover the full amount of their losses, in an amount to be proven at trial, including but not limited to all direct and compensatory damages, consequential damages, lost profits, damage to goodwill, and reputational damages, plus prejudgment interest, attorneys' fees, and costs.

## COUNT II
## BREACH OF EXPRESS WARRANTY

43.     The allegations in paragraphs 1-42 above are incorporated by reference as though fully set forth herein.

44.     Morey expressly warranted that that it would perform its services "with at least that degree of skill and judgment normally exercised by recognized professional firms performing services of the same or substantially similar nature," and further warranted the SX1 for parts and workmanship.

45.     Morey breached its obligations under its warranties to Orbit One in regard to the following omissions on its part:

a. failing to properly inspect, test and ensure that the components and parts it procured were suitable for use in the SX1 and met the required specifications;

12

b. failing to provide notice to Orbit One of, or take any action with respect to, changes to the u-blox specifications concerning the components it had contracted to obtain and include as a part of the SX1;

c. failing to respond to and handle requests for support, repair and replacement of defective products; and

d. otherwise failing to make sure that the SX1 performed as required.

46. Plaintiffs have satisfied all conditions precedent to recovering from Morey on the contract.

47. Morey's refusal to make Plaintiffs whole has furthermore been in bad faith.

48. Plaintiffs are entitled to recover the full amount of their losses, in an amount to be proven at trial, including but not limited to all direct and compensatory damages, indirect and incidental damages, consequential damages, lost profits, refunds, damage to goodwill, and reputational damages, plus prejudgment interest, attorneys' fees, and costs.

## COUNT III
## <u>BREACH OF IMPLIED WARRANTY</u>

49.     The allegations in paragraphs 1-48 above are incorporated by reference as though fully set forth herein.

50.     Morey's arrangement as manufacturer and supplier of products to Orbit One included implied warranties of fitness and merchantability that were not disclaimed in the BSA.

51.     By failing to ensure that the components and parts procured were suitable for use in the SX1 and met the required specifications; failing to ensure the assembled product properly performed and was reliable as required by Plaintiffs and their customers; and otherwise failing to make sure that the SX1 was merchantable and performed as required, Morey has breached its implied warranty obligations.

52.     Plaintiffs have satisfied all conditions precedent to recovering from Morey on the contract.

53.     Morey's refusal to make Plaintiffs whole has furthermore been in bad faith.

54.     Plaintiffs are entitled to recover the full amount of their losses, in an amount to be proven at trial, including but not limited to all direct and

compensatory damages, indirect and incidental damages, consequential damages, lost profits, damage to goodwill, and reputational damages, plus prejudgment interest, attorneys' fees, and costs.

**COUNT IV**
**NEGLIGENCE**

55.    The allegations in paragraphs 1-54 above are incorporated by reference as though fully set forth herein.

56.    Morey owed a duty to Plaintiffs arising from their relationship.

57.    Morey breached its duty owed to Plaintiffs by being negligent in regard to the following on its part:

a.  failing to ensure that the components and parts procured were suitable for use in the SX1 and met the required specifications;

b.  failing to monitor and provide notice to Orbit One of changes to the specifications of the u-blox components;

c.  failing to inspect, test and assemble SX1 units so that each unit met required specifications and the specific needs of Orbit One;

d.  failing to make sure that the SX1 product performed as required;

e.  failing to properly and timely provide support and repair services with regard to defective units; and

f. failing to pursue claims against component and part suppliers regarding the same.

58.     Morey's negligence proximately caused Plaintiffs damages.

59.     Plaintiffs are entitled to recover the full amount of their losses resulting from Morey's negligence, in an amount to be proven at trial, including but not limited to all direct and compensatory damages, indirect and incidental damages, consequential damages, lost profits, damage to goodwill, and reputational damages, plus prejudgment interest, attorneys' fees, and costs.

## COUNT V
## NEGLIGENT MISREPRESENTATION

60.     The allegations in paragraphs 1-59 above are incorporated by reference as though fully set forth herein.

61.     Morey misrepresented to Orbit One that the SX1 would perform as specified by Orbit One.

62.     Morey also failed to inform Orbit One of material facts, including that the published specifications for the u-blox components had changed.

63.     Morey's misrepresentations and material omissions were negligent.

64.     Orbit One reasonably relied, to its detriment, on Morey's misrepresentations and material omissions, and suffered damages as a result.

16

65. Plaintiffs are entitled to recover the full amount of their losses resulting from Morey's negligent misrepresentations and omissions, in an amount to be proven at trial, including but not limited to all direct and compensatory damages, indirect and incidental damages, consequential damages, lost profits, damage to goodwill, reputational damages, plus prejudgment interest, attorneys' fees, and costs.

## COUNT VI
## ATTORNEY'S FEES AND EXPENSES
## UNDER O.C.G.A. § 13-6-11

66. The allegations in paragraphs 1-65 above are incorporated by reference as though fully set forth herein.

67. As described at length above in the preceding paragraphs of this Complaint, Morey has acted in bad faith in the underlying transaction, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense.

68. Morey is responsible for paying Plaintiffs' attorney's fees and expenses of litigation incurred in bringing and prosecuting this case, in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request the following relief:

17

1.    That the Court enter judgment in favor of Plaintiffs and against Defendant Morey on Counts One through Five of this Complaint, in an amount to be determined at trial, but at a minimum $10,000,000, plus prejudgment interest;

2.    That the Court additionally enter judgment in favor of Plaintiffs and against Defendant Morey in an amount equal to the attorneys' fees and costs incurred by Plaintiffs in bringing and prosecuting this action, pursuant to Plaintiffs' Count Six under O.C.G.A. § 13-6-11 and pursuant to other applicable law;

3.    That Plaintiffs have a trial by jury as to all issues so triable; and

4.    That Plaintiffs be awarded such other relief as this Court deems just and proper.

18

Respectfully submitted,


_/s/ Todd E. Jones_____
Todd E. Jones
Georgia Bar No. 403925
Joseph C. Sullivan
Georgia Bar No. 153098
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle
Suite 400
Atlanta, Georgia 30339
Phone: (770) 434-6868
Fax: (770) 434-7376

Attorneys for Plaintiffs